NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BRIAN CARTER,** | **Civil Action No. 08-1301 (PGS)** |
| **Plaintiffs,** | |
| **v.** | **MEMORANDUM ORDER** |
| **ESTATE OF GEORGE BALDWIN LEWIS, JR., et al.,** | |
| **Defendants.** | |

This matter comes before the Court upon Plaintiff Brian Carter's ("Plaintiff") request for leave to file his Sixth Amended Complaint in order add Katherine Agosto ("Ms. Agosto") as a defendant [Docket Entry No. 164].  Defendants  Shrewsbury Avenue AME Zion Church and Reverend Theodore T. Calhoun, Sr. (collectively, "Church Defendants") do not oppose Plaintiff's motion.  However, Defendants Gertrude Benjamin, Fred Rhinehard and Watson Stillwagon (collectively, "State Defendants") oppose Plaintiff's motion to amend.  The Court has fully reviewed and considered all arguments made in support of and in opposition to Plaintiff's motion.  The Court considers Plaintiff's motion without oral argument pursuant to FED.R.CIV.P. 78.  For the reasons set forth more fully below, Plaintiff's motion is GRANTED.

## I.      Background and Procedural History

This case involves the alleged sexual abuse of Plaintiff while in the custody of AME Zion Church and two of their pastors, Defendants Reverend Theodore Calhoun, Sr. ("Rev. Calhoun") and Reverend George Baldwin Lewis ("Rev. Lewis").  Plaintiff states that he recently began to understand the nature of the crimes committed against him and that he suffers from "serious

mental and emotional disabilities." A total of six complaints have already been filed in this case. Plaintiff initially represented himself and filed the first two Complaints *pro se*. Per the Court's May 22, 2009 Order, *pro bono* counsel was appointed [Docket Entry No. 69]. Counsel for Plaintiff thereafter filed a Second Amended Complaint which better articulated the factual basis for Plaintiff's claims and which asserted additional claims. The Third, Fourth and Fifth Amended Complaints related to properly identifying the AME Zion Church Defendants.

Plaintiff states that, at the time Plaintiff came into the Church Defendant's custody, The Division of Youth and Family Services ("DYFS") was responsible for monitoring him. Plaintiff contends that Ms. Agosto, a former employee of DYFS, was Plaintiff's case supervisor while Plaintiff was living in Cumberland County with Rev. Lewis. Plaintiff asserts that Ms. Agosto was aware of sexual abuse allegations against Rev. Lewis, that she knew that Rev. Lewis shared a bed with Plaintiff and that she was aware, or should have been aware, of allegations against Rev. Lewis from the Virgin Islands.

Plaintiff argues that there is no conceivable prejudice to Ms. Agosto or the other Defendants by permitting him to file the Sixth Amended Complaint. Plaintiff alleges that Ms. Agosto has been on notice of the allegations through the State Attorney General's Office. Plaintiff states that Ms. Agosto will have sufficient time to engage in discovery and that she will be entering the case at the same time as Defendant African Methodist Episcopal Zion Church of America, who has yet to file an Answer.

Plaintiff asserts that he will be prejudiced by a denial of the request to amend. Plaintiff states that he has viable claims against defendants for crimes that could have been prevented.

Plaintiff contends that denial of the request to amend would allow those most responsible for his

suffering to avoid liability.

The State Defendants oppose Plaintiff's motion and argue that it should be denied as

futile because the proposed Complaint does not state a claim of a constitutional violation.  The

State Defendants set forth the standard for recovering damages under 42 U.S.C. §1983.

According to the State Defendants, Plaintiff must first establish that a constitutional right was

violated and that, in general, the failure to protect an individual against private violence is not a

violation of due process.  *Nicini v. Morra*, 212 F.3d 798, at 806 (3d Cir. 2000) citing *DeShaney*

*v. Winnebago County Department of Social Services*, 489 U.S. 189, 202 (1989).  However, there

are exceptions to this general rule and a due process violation may be found as a result of failure

to protect against violence where (1) the state or state actor has a special relationship with the

plaintiff, generally based on the custodial status of the plaintiff; or (2) the state actor created a

danger that would not have otherwise existed.  *Id.*

The State Defendants assert that, before Plaintiff's adopted parents died, they made

arrangements with the Church for Plaintiff's care and that Rev. Lewis became Plaintiff's

"guardian."  The State Defendants further assert that, although DYFS did provide some services

to Plaintiff, he was never in DYFS custody as a foster child or otherwise after his adoptive

parents died.  Therefore, the State Defendants conclude that Plaintiff was not in State custody

when his adoptive family made private arrangements for his care by relinquishing control of

Plaintiff to the Church and Rev. Lewis.  As such, the State Defendants argue that there can be no

violation because no special relationship existed.  Further, the State Defendants respond to

Plaintiff's allegation that the individual DYFS employees "were responsible for the protection of

children placed in foster and subsidized adoptive care." The State Defendants argue that there is

no decisional or other law which creates a constitutional duty to protect when the State provides

an adoption subsidy.

With respect to the second exception, the State Defendants acknowledge that the Third

Circuit has recognized the state-created danger theory in contexts where there is no custodial

relationship. *Sanford v. Stiles*, 456 F.3d 298 (3d Cir. 2006); *Gonzales v. City of Camden*, 357

N.J. Super. 339 (App. Div. 2003). The State Defendants contend that the state-created danger

cannot rest on a failure to act, but that an affirmative act which places the plaintiff in danger is

required. *D.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364 (3d Cir.

1992), *cert. denied*, 506 U.S. 1079 (1993). The State Defendants repeat that it was Plaintiff's

adoptive family, and not DYFS, who placed Plaintiff with the Church and allowed Rev. Lewis to

take physical custody of him. They argue that there is no evidence which shows that the State

Defendants had any role in placing Plaintiff with Rev. Lewis.

Finally, the State Defendants describe the work performed by Ms. Agosto and DYFS,

including numerous interviews by DYFS workers, a therapist and the Prosecutor's Office which

they believe establishes that the State Defendants acted appropriately. As such, the State

Defendants argue that the facts of the case do not establish any culpability or meet any standard

for a constitutional violation. The State Defendants assert that Rev. Lewis was a private actor

who is responsible for the harm to Plaintiff and they argue that Plaintiff has failed to cite any

statutory or common law cause of action for damages against a State agency or its employees.

Plaintiff has filed a Reply brief. In it he asserts that the depositions of DYFS employees

taken so far demonstrate that DYFS took affirmative responsibility for the protection of Plaintiff

beginning with a home-study in 1994 and ending with DYFS's ultimate decision to remove Plaintiff from Rev. Lewis in 2000. Plaintiff concedes that Rev. Lewis gained temporary legal custody of Plaintiff in 1994; however, Plaintiff argues that Rev. Lewis never formally adopted him. Plaintiff attribute's Ms. Agosto's decision not to remove Plaintiff from Rev. Lewis's custody to her mistaken belief that Rev. Lewis had the rights of an adoptive parent. As such, Plaintiff argues that a special relationship did exist between the State and Plaintiff.

Further, contrary to the State Defendants' argument that they took proper action in following Plaintiff's case, Plaintiff states that he should have been removed from the home. He points to the testimony of Defendant Gertrude Benjamin in support of this contention. However, Ms. Agosto permitted Plaintiff to remain with Rev. Lewis based, in part, on her mistaken belief that Rev. Lewis had legally adopted Plaintiff. Plaintiff asserts that a simple review of the DYFS file would have revealed otherwise and may have prevented him from suffering as he did. He believes he should be afforded the opportunity to make these arguments at trial.

## II.    Analysis

Plaintiffs seek to amend their Complaint in order to add Ms. Agosto as a defendant in this matter. Because Plaintiffs motion was filed after the August 27, 2010 deadline for filing motions to amend the pleadings, Plaintiffs must meet the "good cause" standard set forth in Rule 16(b) for modifying a scheduling order before they will be permitted to amend their Complaint. The Court has broad "discretion in determining what kind of showing the moving party must make in order to satisfy Rule 16(b)'s good cause requirement." *Phillips v. Greben*, Civil No. 04-5590 (GEB), 2006 WL 3069475, *6 (D.N.J. Oct. 27, 2006). Whether good cause exists depends on

-5-

the diligence of the moving party.  Rule 16(b) advisory committee's note;  *Hutchins v. United*

*Parcel Service, Inc.*, No. 01-CV-1462 WJM, 2005 WL 1793695, *3 (D.N.J. July 26, 2005).  The

movant may establish good cause by demonstrating that "their delay in filing the motion to

amend stemmed from 'any mistake, excusable neglect or any other factor which might

understandably account for failure of counsel to undertake to comply with the Scheduling

Order.'" *Phillips*, 2006 WL 306945, at *6 (quoting *Newton v. Dana Corp. Parish Div.*, No. CIV.

A. 94-4958, 1995 WL 368172, *1 (E.D.Pa. June 21, 1995) (internal quotation marks and citation

omitted)).  Further, in making this determination the Court "must consider F.R.Civ.P. 16(b)'s

requirement that scheduling orders only be modified for 'good cause' in conjunction with Rule

15(a)'s directive that leave to amend a complaint be 'freely given.'" *Reynolds v. Borough of*

*Avalon*, 799 F.Supp. 442, 450 (D.N.J. 1992).

Pursuant to FED.R.CIV.P. 15(a)(2), leave to amend the pleadings is generally given freely.

*See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir.

2000).  Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad

faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of

the amendment, [or] futility of the amendment." *Id*.  However, where there is an absence of

undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be

liberally granted.  *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

In deciding whether to grant leave to amend under Rule 15(a)(2), "prejudice to the non-

moving party is the touchstone for the denial of the amendment." *Bechtel v. Robinson*, 886 F.2d

644, 652 (3d Cir. 1989) (quoting *Cornell & Co., Inc. v. Occupational Health and Safety Review*

*Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)).  To establish prejudice, the non-moving party must

make a showing that allowing the amended pleading would (1) require the non-moving party to

expend significant additional resources to conduct discovery and prepare for trial, (2)

significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely

action in another jurisdiction.  *See Long*, 393 F.3d at 400.  Delay alone, however, does not justify

denying a motion to amend.  *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273

(3d Cir. 2001).  Rather, it is only where delay becomes "'undue,' placing an unwarranted burden

on the court, or . . . 'prejudicial,' placing an unfair burden on the opposing party" that denial of a

motion to amend is appropriate.  *Adams v. Gould Inc.,* 739 F.2d 858, 868 (3d Cir. 1984).

Moreover, unless the delay at issue will prejudice the non-moving party, a movant does not need

to establish a compelling reason for its delay.  *See Heyl & Patterson Int'l, Inc. v. F. D. Rich*

*Housing of Virgin Islands, Inc.*, 663 F.2d 419, 426 (3d Cir. 1981).

   The Court will first address the issue of prejudice, as that is the factor on which Plaintiff

focuses.  Plaintiff stresses that it would be inequitable to deny him leave to amend the Complaint.

Plaintiff explains that Ms. Agosto had a key role in DYFS's failure to remove Plaintiff from the

abusive home.  As such, Plaintiff believes he is entitled to the opportunity to address her

misjudgments in Court.  Plaintiff further states that neither Defendants, nor Ms. Agosto who

apparently had notice of these proceedings, will not be prejudiced with amendment.  Defendants

do not argue that they would suffer any prejudice.

   The next relevant factor which the State Defendants raise involves the issue of futility.

The State Defendants assert that Plaintiff has not properly pled a cause of action with respect to

the § 1983 claim against them and, thus, the addition of another State Defendant, Ms. Agosto,

would be futile.  The Court has already addressed this argument in its December 28, 2009 Order

granting Plaintiff leave to file a Second Amended Complaint ("SAC") [Docket Entry No. 93].

The Court repeats now that, accepting all of the allegations in Plaintiff's complaint as true and

drawing all reasonable inferences in favor of Plaintiff, the Court does not find Plaintiff's claim

against these individual defendants to be futile. Plaintiff's Complaint alleges that DYFS was

responsible for Plaintiff's well-being, from which it is reasonable to infer the existence of the

"special relationship" that is required by § 1983.

However, the prominent difference between the two motions to amend is the substantial

lapse of time.  Neither party addresses this issue nor do they even take notice of the fact that this

motion was filed over a year past the deadline for filing motions to amend.  Several orders have

been issues which extend deadlines in this case; however, they have all dealt with discovery

issues.  Indeed, Plaintiff has been permitted to file three (3) additional Amended Complaints

since the August 27, 2010 deadline for filing motions to amend lapsed.  However, all three of

those Amended Complaints were unopposed.  Defendants even consented to the filing of the

Fourth and Fifth Amended Complaints.  Therefore, presently before the Court is the first opposed

request to file an amended Complaint which was filed beyond the deadline set forth in the parties

Pretrial Scheduling Order [Docket Entry No. 108].   While Plaintiff fails to address the delay in

adding Ms. Agosto as a defendant, neither does the State raise it as an issue.  The Court has

therefore solely addressed the basis for the opposition, namely, futility.

### III.  Conclusion

The Court finds it to be in the interests of justice, particularly in light of the fact that there will be no prejudice to Defendants, to allow Plaintiff to add Ms. Agosto as a named Defendant. The Court has an interest in resolving these claims on their merits fully and completely.  If Plaintiff's allegations are true, Ms. Agosto played a key role in DYFS's involvement in Plaintiff's life and in this case.  For that reason, Plaintiff should be afforded the opportunity to address any of her alleged wrongdoings.  As such, the Court shall grant Plaintiff's motion for leave to file a Sixth Amended Complaint.

For the reasons stated above and for good cause shown

**IT IS** on this 7th day of November, 2011

**ORDERED** that Plaintiff's motion to file a Sixth Amended Complaint is **GRANTED** and he shall file same within ten (10) days of the date of this Order; and it is further

**ORDERED** that Defendants shall file responsive pleadings within twenty one (21) days of the date of filing of Plaintiff's Sixth Amended Complaint; and it is further

**ORDERED** that the Clerk of the Court shall terminate this motion [Docket Entry No. 164] accordingly.

s/  Tonianne J. Bongiovanni

**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**
